**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| MLCJR, LLC, *et al.*,[1] | Case No. 23-90324 (CML) |
| Debtors. | |
| PREMIER OFFSHORE CATERING, INC. | Adversary No. _____ |
| Plaintiff. | |
| v. | |
| COX OIL OFFSHORE, L.L.C., COX OIL OPERATING, L.L.C., ENERGY XXI GOM LLC EPL OIL & GAS, LLC, GOM SHELF, LLC, AMARILLO NATIONAL BANK, and BP ENERGY COMPANY | |
| Defendants. | |

**COMPLAINT OF PREMIER OFFSHORE CATERING, INC. REQUESTING
DECLARATORY JUDGMENT TO DETERMINE VALIDITY, PRIORITY, AND
<u>EXTENT OF LIENS AGAINST THE DEBTORS' PROPERTIES</u>**

Premier Offshore Catering, Inc. ("***Premier***"), by and through undersigned counsel, files

this *Complaint of Premier Offshore Catering, Inc. Requesting Declaratory Judgment to Determine*

*Validity, Priority, and Extent of Liens against the Debtors' Properties* pursuant to Rule 7001 of

the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), seeking a determination

regarding the validity, priority, and extent of its statutory mineral liens under applicable state law

on certain of the Debtors' properties, respectfully showing as follows:

---

[1] The Debtors in these cases (the "***Bankruptcy Cases***") are: MLCJR, LLC; Cox Oil Offshore, L.L.C.; Cox Operating, L.L.C.; Energy XXI GOM, LLC; Energy XXI Gulf Coast, LLC; EPL Oil & Gas, LLC; and M21K, LLC.

## PARTIES

1.      Plaintiff Premier is a corporation organized under the laws of Louisiana, with its principal place of business in Gray, Louisiana.

2.      Defendant Cox Operating, LLC ("*Cox Operating*") is a limited liability company organized under the laws of Louisiana, with a mailing address in Dallas, Texas. Cox Operating may be served through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.      Defendant Energy XXI GOM, LLC ("*Energy XXI*") is a limited liability company organized under the laws of Delaware, with its principal place of business in Dallas, Texas. Energy XXI  may be served with process through its registered agent CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

4.      Defendant Cox Oil Offshore, LLC ("*Cox Offshore*") is a limited liability company organized under the laws of Louisiana, which is domiciled in New Orleans, LA. Cox Offshore may be served with process through its registered agent CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

5.      Defendant EPL Oil and Gas, LLC ("*EPL*," and together with Cox Operating, Energy XXI, and Cox Offshore, the "*Debtor Defendants*") is a limited liability company organized under the laws of Delaware, with its principal place of business in Dallas, Texas. EPL may be served with process through its registered agent CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

6.      Defendant GOM Shelf, LLC ("*GOM Shelf*" and together with the Debtor Defendants, the "*Cox Defendants*") is a limited liability company organized under the laws of Delaware, with its principal place of business in Houston, Texas. GOM Shelf may be served with

2

process through its registered agent, Capitol Corporate Services, Inc., 8550 United Plaza Building II, Ste. 305, Baton Rouge, Louisiana 70809.

7.      Defendant Amarillo National Bank ("*ANB*") is a private banking institution established under the laws of Texas, with its principal place of business in Amarillo, Texas. ANB may be served with process through its registered agent, Jerry Ivy, Plaza One, 4th & Taylor, Amarillo, TX 79101.

8.      Defendant BP Energy Company ("*BP Energy*" and together with ANB, the "*DIP Lenders*") is a corporation organized under Delaware law, with its principal place of business in Houston, Texas. BP Energy may be served with process through its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

## JURISDICTION AND VENUE

9.      The Debtor Defendants are chapter 11 debtors whose Bankruptcy Cases are being jointly administered in the proceeding captioned *In re MLCJR, LLC*, 23-90324 (CML) pending before this Court.

10.      This Court has jurisdiction over the Bankruptcy Cases and this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the *Order* from the United States District Court for the District of Texas dated May 24, 2012 referring most bankruptcy matters to bankruptcy courts within this District. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Bankruptcy Rule 7001(2) & (9).

11.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (M).

12.      Venue of the Bankruptcy Cases and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

13.      Pursuant to Bankruptcy Rule 7008 and Rule 7008-1 of the Bankruptcy Local Rules

for this Court (the "***Local Rules***"), Premier consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## NATURE OF ACTION

14. This is an action pursuant to Bankruptcy Rule 7001(2) & (9) and the Declaratory Judgment Act, 28 U.S.C. § 2201.

15. By this Complaint, Premier seeks a judgment from this Court determining the validity of Premier's statutory mineral liens and the priority of those liens relative to the prepetition and post-petition liens and security interests allegedly held by the DIP Lenders. Specifically, Premier seeks a determination that (i) Premier holds valid, fully-perfected, and enforceable statutory mineral liens on certain properties of the Cox Defendants, and (ii) certain of those valid, fully perfected, and enforceable statutory mineral liens are senior in priority to the Purported Liens.

## FACTUAL AND PROCEDURAL HISTORY

### i. Debtors' Prepetition Contracts

16. On April 15, 2016, MLCJR, LLC ("***MLCJR***") and ANB entered into a loan agreement (as renewed, supplemented, amended, or otherwise modified the "***ANB Loan Agreement***"), pursuant to which ANB extended a revolving line of credit to MLCJR, in the original amount of $65 million. Bankruptcy Cases, Docket No. 295-6 at 28. Through a series of amendments, the maximum indebtedness under the ANB Loan Agreement was increased to $80 million. *See Second Promissory Note Modification Agreement*, Bankruptcy Cases, Docket No. 295-6 at 134.

17. On or about May 27, 2016, Cox Offshore recorded a *Mortgage, Assignment of Rents, Security Agreement and Fixture Filing* (the "***2016 Mortgage***"), which purports to grant in

favor of ANB security intersts in certain oil and gas properties listed in the 2016 Mortgage (the

"***2016 Properties***") to secure repayment of the indebtedness under the ANB Loan Agreement.

Bankruptcy Cases, Docket No. 59-9. The 2016 Properties are listed in the following table.

### Table 1: Identifying Information for 2016 Properties

| Lease No. | Lease Type | Area | Block |
|---|---|---|---|
| OCS-G 2893 | Oil and Gas | Eugene Island | 24 |
| OCS-G 1865 | Oil and Gas | Eugene Island | 64 |
| OCS-G 3783 | Oil and Gas | Eugene Island | 353 |
| OCS-G 2323 | Oil and Gas | Eugene Island | 360 |
| OCS-G 2324 | Oil and Gas | Eugene Island | 361 |
| OCS-G 2388 | Oil and Gas | High Island | A563 |
| OCS-G 2719 | Oil and Gas | High Island | A582 |
| OCS-G 5749 | Oil and Gas | Mobile | 904 |
| OCS-G 5252 | Oil and Gas | Mobile | 905 |
| OCS-G 6850 | Oil and Gas | Mobile | 872 |
| OCS-G 5753 | Oil and Gas | Mobile | 916 |
| OCS-G 5754 | Oil and Gas | Mobile | 917 |
| OCS-G 12114 | Oil and Gas | Mobile | 918 |
| OCS-G 5761 | Oil and Gas | Mobile | 961 |
| OCS-G 4481 | Oil and Gas | Main Pass | 77 & 78 |
| LA St. Lease 340 | Oil and Gas | Mound Point | N/A |
| OCS-G 2316 | Oil and Gas | South Marsh Island | 288 |
| OCS-G 8684 | Oil and Gas | South Marsh Island | 90 |
| OCS-G 4109 | Oil and Gas | South Marsh Island | 99 |
| LA St. Lease 340 | Oil and Gas | South Marsh Island | 223 |
| OCS-G 4437 | Oil and Gas | South Marsh Island | 236 |
| OCS-G 0819 | Oil and Gas | Ship Shoal | 168 |
| OCS-G 1019 | Oil and Gas | Ship Shoal | 182 |
| OCS-G 0821 | Oil and Gas | Ship Shoal | 183 |
| LA St. Lease 340 | Oil and Gas | Tiger Shoal | N/A |
| OCS-G 2076 | Oil and Gas | Vermillion | 214 |
| OCS-G 1146 | Oil and Gas | Vermillion | 245 |
| OCS-G 10930 | Oil and Gas | Viosca Knoll | 251 |
| OCS-G 2445 | Oil and Gas | Viosca Knoll | 900 |
| LA St. Lease 3839 (QLS No. 074268) | Oil and Gas | West Cameron | 17 |
| LA St. Lease 3839 (QLS No. 104190) | Oil and Gas | West Cameron | 17 |
| LA St. Lease 3840 (QLS No. 074269) | Oil and Gas | West Cameron | 48 |
| LA St. Lease 3840 (QLS No. 104189) | Oil and Gas | West Cameron | 48 |
| LA St. Lease 3841 (QLS No. 109807) | Oil and Gas | West Cameron | 18 |
| LA St. Lease 3841 (QLS No. 109259) | Oil and Gas | West Cameron | 18 |
| OCS-G 1351 | Oil and Gas | West Cameron | 17/48 |
| LA St. Lease 44189 | Oil and Gas | West Cameron | 18 |
| OCS-G 1435 | Oil and Gas | West Cameron | 18/47 |

| OCS-G 1438 | Oil and Gas | West Cameron | 48 |
|---|---|---|---|
| OCS-G 1439 | Oil and Gas | West Cameron | 49 |
| QLS No. 040692 | Water Bottom | West Cameron | N/A |
| OCS-G 22501 | Oil and Gas | West Cameron | 54 |
| QLS No. 936544 | Surface | West Cameron | N/A |
| OCS-G 2937 | Oil and Gas | West Delta | 109 |

18. The 2016 Mortgage states that the maximum indebtedness allowed thereunder is $100 million. *Id.* at 5.

19. On or about October 18, 2018, MLCJR executed a *Master Agreement* with BP, pursuant to which the Debtors entered into discrete hedging transactions or "swaps" (the "***Swaps Agreements***"), through which the Debtors sought to limit the impact of price fluctations impacting the Debtors' oil and gas operations. *See* Bankruptcy Cases, Docket No. 295-7.

20. On or about January 28, 2019, Cox Offshore recorded an *Amended and Restated Mortgage, Assignment of Rents, Security Agreement and Fixture Filing*, (the "***2019 Mortgage***"), which purports to amend and restate the 2016 Mortgage in its entirety, secure repayment of the indebtedness under the ANB Loan Agreement and any amendments thereto, and lists the 2016 Properties as security for such repayment. Bankruptcy Cases, Docket No. 59-10 at 38-43. The 2019 Mortgage states $500 million as the maximum indebtedness securable. *Id.* at 23.

21. On December 10, 2021, MLCJR, ANB, and BP Energy Company entered into a *Second Amended and Restated Intercreditor Agreement*, (the "***Intercreditor Agreement***"). Bankruptcy Cases, Docket 295-9. The Intercreditor Agreement establishes the relative obligations, rights, and remedies between the DIP Lenders regarding the payment of MLCJR's obligations to ANB under the ANB Loan Agreement (the "***ANB Loan Obligations***"), the obligations of MLCJR to BP under the Swap Agreements (the "***Swap Obligations***") (collectively, the "***Intercreditor Obligations***"), and the exercise of rights and remedies against the assets of the Debtor Defendants that are subject to the liens, if any, established pursuant to the ANB Loan Agreement and any

associated mortgages or security agreements.  *Id.* at 6-7.

22.     The Intercreditor Agreement provides, *inter alia*, that the ANB Loan Obligations and the Swap Obligations "shall be each secured on a first priority, pari passu basis." Intercreditor Agreement. *Id.* at 6.

23.     On or about April 28, 2023, Cox Offshore recorded a *Supplemental Mortgage, Assignment of Rents, Security Agreement and Fixture Filing*, (the "***2023 Mortgage,***" and together with the 2016 Mortgage and 2019 Mortgage, the "***Mortgages***"), which purports to supplement, ratify, and confirm the 2019 Mortgage in its entirety, and to renew and carry forward the liens and security intersts created, extended, or renewed by the 2019 Mortgage. Bankruptcy Cases, Docket No. 59-10. The 2023 Mortgage lists as collateral certain oil and gas properties not referenced in the 2016 Mortgage or the 2019 Mortgage, (the "***Additional 2023 Properties***" and together with the 2016 Properties, the "***Properties***"). A list of the Additional 2023 Properties, extracted from the 2023 Mortgage, is attached hereto and incorporated by reference as **Exhibit 1.**

24.     Upon information and belief, neither of the DIP Lenders recorded any instruments encumbering the 2023 Oil and Gas Properties prior to the 2023 Mortgage. Furthermore, BP Energy is not listed as mortgagee in any of the Mortgages.

### ii.     Premier's Services to the Debtor Defendants and Resulting Liens

25.     Between September 1, 2022 and March 31, 2023, prior to the recordation of the 2023 Mortgage, Premier provided services, material, and/or equipment ("***Services***") at the request of one or more of the Cox Defendants in support of the development and maintenance of mineral leasehold estates, all or a portion of which are owned by one or more of the Debtor Defendants.

26.     Premier submitted invoices to Energy XXI and Cox Operating for the Services Premier provided. The Debtor Defendants have failed to pay to Premier for the Services reflected

in the unpaid invoices (the "***Outstanding Invoices***"), which are due and owing in the principal amount of **$1,056,120.60**, plus unliquidated amounts for accruing legal fees, costs, interest, and other charges. The Services provided by Premier maintained, serviced or repaired certain oil and/or gas wells owned and operated by the Defendant Debtors (collectively, the "***Oil & Gas Properties***"), as described more fully in the *Oil Well Lien Affidavits, Notices of Claim of Lien and Statements of Privilege* (the "***Lien Affidavits***"). *See* Bankruptcy Cases, Docket No. 360-1—360-37.

27.    In accordance with applicable state law, either La. R.S. 9:4861, *et seq.* ("***LOWLA***") or Ala. Code § 35-11-210, *et seq.*, Premier timely perfected and maintained the perfection of its liens (the "***Premier Liens***") against each of the Oil & Gas Properties by recording the Lien Affidavits in the mortgage records for the appropriate parishes and counties and by mailing the Operator Letters (defined hereinbelow). *Id*.

28.    Information relevant to the establishment, relation back, and perfection of the Premier Liens is summarized in the following table:

| OCS Lease Number | Area/Block | Continuous Service Period | Recordation Date(s)/Parish(es) | Principal Amount |
|---|---|---|---|---|
| G-02177 | SP 49 | 2/25/23 - 2/25/23 | Plaquemines (5/11/23) Bk. 830, pg. 163 | $2,012.00 |
| G-02062 | EC 334 | 9/19/22 - 12/10/22 | Cameron (5/10/23) Inst. No. 354691 | $114,423.45 |
| G-02947 | MP 73 | 9/1/22 - 3/31/23 | Plaquemines (5/11/23) Bk. 830, pg. 152 | $53,088.50 |
| G-00310 | SMI 217 | 9/1/22 - 3/21/23 | Iberia (5/10/23) Inst. No. 13819<br>Vermilion (5/10/23) Inst. No. 2023003295 | $32,417.55 |
| G-00175 | GI 43 AA | 1/12/23- 3/08/23 | Lafourche (5/10/23) Bk. 2293, pg. 842<br>Jefferson (5/10/23) Bk. 5028, pg. 913 | $13,413.00 |
| G-00133 | GI 47 | 1/26/23-3/23/23 | Jefferson (5/10/23) Bk. 5028, pg. 914 | $13,839.72 |
| G-05753 | MO 916 | 11/08/22-1/15/22 | Mobile (5/11/23) Inst. No. 2023029785<br>Baldwin (5/11/23) Inst. No. 2062985 | $6,081.36 |
| G-00827 | SS 209 | 9/1/22 - 3/31/23 | Terrebonne (5/10/23) Bk. 3422, pg. 261<br>Lafourche (5/10/23) Bk. 2293, pg. 880 | $98,568.73 |
| G-00019 | ST 54 | 9/1/22 - 3/31/23 | Terrebonne (5/10/23) Bk. 3422, pg. 284<br>Lafourche (5/10/23) Bk. 2294, pg. 1 | $70,911.01[2] |

---

[2] These amounts relate to goods and services provided to the Cox Defendants in connection with production facilities

| | | | | |
|---|---|---|---|---|
| **G-00422** | ST 54 | 9/1/22 - 3/31/23 | Terrebonne (5/10/23) Bk. 3422, pg. 273<br>Lafourche (5/10/23) Bk. 2293, pg. 817 | |
| **G-02324** | EI 361 | 9/1/22 - 3/31/23 | Terrebonne (5/10/23) Bk. 3422, pg. 249<br>St. Mary (5/10/23) Bk. 1681, pg. 396<br>Iberia (5/10/23) Inst. No. 13818 | $68,607.98 |
| **G-02323** | EI 360 | 9/1/22 - 1/03/23 | Terrebonne (5/10/23), Bk. 3422, pg. 229<br>St. Mary (5/10/23) Bk. 1681, pg. 388<br>Iberia (5/10/23) Inst. No. 13817 | $22,406.02 |
| **G-00985** | EI 259, 259 B, and 259 C | 9/1/22 - 3/31/23 | Terrebonne (5/10/23) Bk. 3422, pg. 297<br>St. Mary (5/10/23) Bk. 1681, pg. 376 | $69,859.50 |
| **G-01959** | EI 258 and EI 258 A | 1/15/23-3/09/23 | Terrebonne (5/10/23) Bk. 3422, pg. 92<br>St. Mary (5/10/23) Bk. 1681, pg. 299 | $25,004.34 |
| **G-00196** | EI 219 | 1/4/23/- 1/10/23 | St. Mary (5/10/23) Bk. 1681, pg. 294<br>Iberia (5/10/23) Inst. No. 13814 | $3,094.99 |
| **G-00031** | GI 22 | 9/1/22 - 1/10/23 | Lafourche (5/10/23) Bk. 2293, pg. 830<br>Jefferson (5/10/23) – Bk. 5028, pg. 912 | $107,935.29 |
| **G-01083** | WD 73 | 09/01/22-3/31/23 | Plaquemines (5/11/23) Bk. 830, pg. 191<br>Lafourche (5/10/23) Bk. 2294, pg. 12<br>Jefferson (5/10/23) Bk. 5028, pg. 918 | $143,139.58 |
| **G-00026** | WD 30 | 09/01/22-3/31/23 | Plaquemines (5/11/23) Bk. 830, pg. 179<br>Jefferson (5/10/23) Bk. 5028, pg. 916 | $106,442.12 |
| **G-00385** | WD 29 | 09/01/22-3/31/23 | Plaquemines (5/11/23) Bk. 830, pg. 168<br>Jefferson (5/10/23) Bk. 5028, pg. 915 | $104,875.46 |
| **SUBTOTAL** | | | | **$1,056,120.60** |

29.     As reflected above, Premier commenced work on the Oil and Gas Properties prior to the recordation of the 2023 Mortgage. Furthermore, only two of the Oil and Gas Properties are listed among the 2016 Properties: OCS-G-05753 and OCS-G-00827, for which Premier provided $104,650.09 in Services. Accordingly, Premier performed the remaining Services, in the principal amount of $951,470.51, in support of Oil and Gas Properties unencumbered by any instrument recorded by the DIP Lenders.

**iii.     The Debtors' Bankruptcy**

30.     On May 14, 2023 (the "***Petition Date***"), the Debtor Defendants and certain of their affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"). *See, e.g.*, Bankruptcy Cases, Docket No. 1.

31.     Cox Offshore, Energy XXI, EPL, and GOM Shelf own certain offshore mineral

---

potentially extending over two leases, OCS-G00019 and OCS-G00422. Keystone recorded Lien Affidavits against both leases out of an abundance of caution, not in an attempt to obtain double recovery.

leasehold interests in the Gulf of Mexico, concentrated off the immediate coast of Louisiana. *See* Schedules of Assets and Liabilities for Cox Offshore, Energy XXI, and EPL. No. 23-90324, Docket Nos. 477, 479, and 481. Cox Operating operates the production facilities in connection with those mineral interests. *See* Bankruptcy Cases, Schedules of Assets and Liabilities for Cox Operating, Docket No. 34 at 15.

32.     On June 12, 2023, Premier filed a *Notice of Continuation and Perfection of Liens against Property of the Debtors' Estates Pursuant to 11 U.S.C. § 546(b)* (Bankruptcy Cases, Docket No. 360) (the "**546 Notice**"), setting forth a claim against the Defendant Debtors and their interests in the Oil and Gas Properties in the amount of **$1,056,120.60** (the "**Secured Claim**").

33.     On June 13, 2023, the Court entered the DIP Order, which recognized in favor of the DIP Lenders "valid, binding, perfected, enforceable liens and security interests" in all or substantially all of the Debtors' property, junior and subordinate to the security interests of the holders of "Permitted Prior Liens." DIP Order, p. 5(e). The term "Permitted Prior Liens" refers to liens or privileges that are valid, perfected, and non-avoidable as of the Petition Date, or valid and non-avoidable liens perfected postpetition by operation of Section 546(b) of the Bankruptcy Code. (the "**Permitted Prior Liens**").

34.     On June 21, 2023, Cox Operating filed its *Schedules of Assets and Liabilities*, listing $80,216,666.66 as the prepetition amount owed to ANB under the ANB Loan Agreement. (the "**ANB Debt**"). Bankruptcy Cases, Docket No. 478 at 38.

35.     As of the filing of the 546 Notice, Premier held a secured claim in the amount of **$1,056,120.60** against the Cox Defendants and the estates of the Debtor Defendants in connection with the Premier Liens, not including accruing attorney's fees, costs, interest, and other charges (the "**Secured Claim**").

**B.      Status of the DIP Lenders as of the Effective Dates of the Premier Liens**

36.      As previously stated, beginning April 15, 2016, ANB made certain loans and extensions of credit under the ANB Loan Agreement to certain of the Debtor Defendants, resulting in an indebtedness purportedly secured by, *inter alia*, the Oil and Gas Properties.

37.      Specifically, in connection with the *Debtor's Emergency Motion for Entry of Orders (I) Authorizing Debtors To (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, and (III) Scheduling Final Hearing* (Docket No. 18) (the "***DIP Motion***"), the DIP Lenders have asserted that, under the ANB Loan Agreement and related agreements, the Debtor Defendants and certain of their affiliates granted to the DIP Lenders "valid, binding, and enforceable liens and security interests, in "substantially all of the Debtors' assets, whether real or personal, tangible or intangible[,]" including oil and gas leasehold interests, working interests, and associated property rights belonging to the Debtors. DIP Motion, at 9-10.

38.      Neither of the DIP Lenders filed any security instruments against the Cox Defendants interests in the Additional 2023 Properties—and thus the security interests claimed by the DIP Lenders cannot have been perfected as to such collateral, if at all—until April 28, 2023, when the 2023 Mortgage was recorded.

**Count I: Declaratory Judgment as to the Establishment, Perfection,
and Relation Back of the Premier Liens**

39.      Premier incorporates each factual allegation set forth above as though restated entirely in this Count I.

40.      Premier disputes the prepetition and post-petition security interests claimed by the DIP Lenders insofar as such interests are asserted to be superior to the valid, perfected, and enforceable Premier Liens, as further described below.

41.     Situated within the Outer Continental Shelf, the Oil and Gas Properties are subject to federal jurisdiction under the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1331, *et seq.* ("**OCSLA**"). Under OCSLA, lien rights against offshore properties are governed by the laws of the adjacent states. *See Cutting Underwater Techs. USA, Inc. v. Con-Dive, L.L.C.*, No. 09-387, 2011 WL 1103679, at *5 (E.D. La. March 22, 2011) ("Congress declared that to the extent that they are applicable and not inconsistent with [federal law], the laws of the adjacent states are the law[s] of the United States on the OCS. . .") (internal quotations and citations omitted), affirmed per curiam by *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512 (5th Cir. 2012).

42.     Louisiana is the adjacent state for all of the Oil and Gas Properties, with the sole exception of the properties associated with OCS-G-05753, which is adjacent to Alabama.

43.     Pursuant to the laws governing mineral liens in both of the relevant states, Premier established, perfected, and maintained the perfection of the Premier Liens against each of the Oil and Gas Properties, which are effective as of, and relate back to, the Commencement Dates.

44.     The laws of Louisiana and Alabama both provide that liens or privileges are effective from the date the claimant begins to provide labor or services, and remain so, provided that the claimant takes steps to maintain that effectiveness under state law. *See* La. R.S. 9:4864(A)(1); Ala. Code § 35-11-211(a).

45.     The Outstanding Invoices included with the Lien Affidavits specify the date, amount, and category of Services provided for each of the Oil and Gas Properties, showing the establishment of the Premier Liens as of the Commencement Dates.

46.     Furthermore, if goods or services are supplied to a single wellsite on a recurring basis without a lapse in activity exceeding statutory limits, the claimant's lien for all work

performed during that period will relate back to the date services commenced. Alabama law provides that a materialman's lien ranks as of the commencement of the work. Ala. Code § 35-11-211(a). Louisiana law provides that "[a]ll obligations owed to a claimant arising from operations on the same operating interest, without a lapse of more than ninety consecutive days . . . are secured by a single privilege …". La. R.S. 4864(C).

47.     The 546 Notice and attached Lien Affidavits demonstrate the continuity of the Services Premier provided in connection with operations at each of the referenced wellsites. Therefore, the liens and privileges against each of the Oil and Gas Properties relate back to the date Premier commenced work on those properties.

48.     Additionally, Premier perfected or maintained the perfection of the Premier Liens against each of the Oil and Gas Properties in accordance with the laws of the governing states, which require the claimant to record affidavits evidencing the liens and commence legal action within prescribed periods in order for the lien to remain effective against third parties. In the event that the filing of a bankruptcy petition bars a claimant from taking such action(s), the Bankruptcy Code empowers the claimant to meet state law requirements by "giving notice within the time fixed by such law for such seizure or such commencement." 11 U.S.C. § 546(b).

49.     Specifically, under Louisiana law, a LOWLA privilege ceases to have effect against third parties, as to property other than a drilling or other rig, unless the claimant files, within 180 days of the last activity or event giving rise to the privilege, a "statement of privilege in the mortgage records of the parish where the operating interest subject to the privilege is located." La. R.S. § 9:4865(A)(1).

50.     Furthermore, to maintain the privilege against property other than an operator-owned rig, the claimant must deliver notice (and "***Operator Letter***") to the operator within the 180-

day period, unless the operator is contractually bound to the claimant. La. R.S. § 9:4867(A).

51.     The content requirements for lien statements under Louisiana law are set forth in La. R.S. § 9:4868:

> A. A statement of privilege must be in writing, signed by or on behalf of the claimant, and contain all of the following information:
>
> (1) The name and address of the claimant.
>
> (2) The amount and nature of the obligation for which the privilege is claimed.
>
> (3) The name and address of the person owing such amount.
>
> (4) The name of the operator of the well as shown by the records of the commissioner of conservation.
>
> (5) A description of the operating interest upon which the privilege is claimed, or of the well with respect to which the operations giving rise to the claimant's privilege were performed.

La. R.S. § 9:4868.

52.     Under the corresponding Alabama law, claimants in contractual privity with the property owner may perfect their materialman's liens by recording a written statement in the probate records for the county in which the property is situated within six months of the last date of the labor or services claimed under the lien, "verified by the oath of the person claiming the lien . . . and "containing the amount of the demand secured by the lien, after all just credits have been given, a description of the property on which the lien is claimed in such a manner that same may be located or identified . . . and the name of the owner or proprietor thereof . . ..". Ala. Code §§ 35-11-213 and 215. For those not in privity with the property owner, the same filing must be made within four months of the last service date. *Id.* Furthermore, all persons not in privity with the property owner give written notice to the property owner or its agent prior to the recordation of the lien "that he claims a lien on such building or improvement, setting forth the amount thereof,

14

for what, and from whom it is owing . . . ". Ala. § 35-11-218. Irrespective of privity, Alabama requires claimants to sue to enforce the lien within six months of the maturity of the entire indebtedness secured by the lien, *i.e.* the last date of services. Ala. Code § 35-11-221.

53.     As evidenced by the 546 Notice, the Lien Affidavits, and the Operator Letters attached hereto as **Exhibit 2**, Premier filed statements of lien meeting the timing, description, and filing location requirements provided under state law, and gave any notice of the Premier Liens by mailing the Operator Letters, thereby establishing or maintaining the perfection of the Premier Liens.

54.     Furthermore, none of the deadlines for Premier to commence legal action to enforce the Premier Liens expired prior to the Petition Date. Accordingly, Premier's filing of the 546 Notice prior to the passing of such deadlines satisfies enforcement requirements under state law, as authorized by the Bankruptcy Code.

55.     Accordingly, Premier respectfully requests a judgment of this Court declaring: (i) that the Premier Liens are valid, fully-perfected, and timely-recorded mineral liens in the principal amount of **$1,056,120.60** against the Oil and Gas Properties, and (ii) that each of the Premier Liens relate back to the date Premier commenced work upon each of the corresponding Oil and Gas Properties.

**Count II: Declaratory Judgment as to the Priority of the Premier
Liens with respect to the Purported Liens of the DIP Lenders
<u>against the Additional 2023 Properties</u>**

56.     Premier incorporates each factual allegation set forth above as though restated entirely in this Court II.

57.     As set forth more fully in Count I, once secured by filing a lien affidavit and perfected by operation of state law, the Premier Liens against the Oil and Gas Properties relate

15

back to, and are effective against third parties from, the date of the commencement of the furnishing of labor and/or materials on the subject leases. *See* La. Rev. Stat. § 9:4864(A) and (C); and Ala. Code § 35-11-211(a).

58.     Because Premier continually provided services from the Commencement Dates through the periods described in Table 2, and Premier properly and timely filed the corresponding Lien Affidavits, the Premier Liens relate back to the Commencement Dates.

59.     Each of the dates that Premier commenced Services for the Debtor Defendants in connection with the Oil and Gas Properties precedes April 28, 2023, the date the 2023 Mortgage was recorded. *See* Table 2. Accordingly, any rights purportedly granted to the DIP Lenders through the 2023 Mortgage, including, but not limited to, Security Interests in favor of one or more of the DIP Lenders against the Additional 2023 Properties, are subordinate to the Premier Liens against the Oil and Gas Properties.

60.     Premier provided no less than $951,470.51 in Services in support of the Additional 2023 Properties. Accordingly, the Premier Liens arising from those amounts are superior in rank to any Security Interests asserted by the DIP Lenders against those properties.

61.     Therefore, Premier respectfully requests a judgment of this Court declaring that the Premier Liens against the Additional 2023 Properties are prior to, and thus effective against, any interests of the DIP Lenders in the 2023 Additional Properties.

### Count III: Declaratory Judgment Barring BP Energy from Enforcing the Mortgages against Premier

62.     Premier incorporates each factual allegation set forth above as though restated entirely in this Court III.

63.     The DIP Lenders assert that BP Energy's interests against the Oil and Gas Properties should rank *pari passu* with those purportedly held by ANB. But BP Energy is not

identified as mortgagee in any of the Mortgages, and therefore can claim no rights through the Mortgages.

64. A contract of mortgage requires a manifestation of assent by the mortgagor to grant the mortgage to the mortgagee. Furthermore, in order to provide notice to third parties that such interest has been conveyed, the mortgagee must be identified in the mortgage or be ascertainable with reasonable certainty.

65. ANB is the first and only mortgagee identified in the Mortgages. Indeed, the Mortgages define ANB exclusively as mortgagee.

66. The Mortgages do not identify BP Energy as a mortgagee, nor is BP Energy's alleged status as a party entitled to enforce obligations under the Mortgages identified.

67. Additionally, the Mortgages provide no contact information for BP Energy and fail to provide any information regarding the apportionment of alleged rights between ANB and BP Energy under the Intercreditor Agreement. Accordingly, the Mortgages do not identify BP Energy as a party holding an alleged Security Interest against the Properties, nor do the Mortgages provide any information to inquiring parties regarding the size or status of BP Energy's claims or interests against the Properties.

68. Furthermore, upon information and belief, the mortgage and conveyance records for the applicable parishes and counties do not contain any other instruments identifying BP Energy as mortgagee with respect to any of the Oil and Gas Properties.

69. The Security Interests claimed by BP Energy against the 2016 Properties appear premised entirely upon rights purportedly shared by ANB and BP Energy under the Intercreditor Agreement, but such agreements only create rights between the contract parties, and therefore are not immediately effective against nonparties.

70.     Furthermore, the Intercreditor Agreement does not appear in the public records for any of the counties or parishes where the Oil and Gas Properties are situated. Having failed to record the instrument upon which its Security Interests against the Properties are premised, any rights held by BP Energy against those properties are ineffective against the valid and timely-perfected Premier Liens.

71.     Accordingly, BP Energy does not have any interest enforceable against third parties under the Mortgages, and the Premier Liens therefore prime any interest claimed by BP Energy thereunder.

72.     Therefore, Premier respectfully requests a judgment of this Court declaring that the Premier Liens are valid, fully-perfected, and timely-recorded mineral liens that are senior to the prepetition and post-petition claims and interests of BP Energy, including, but not limited to, claims and interests against the 2016 Properties.

**Count IV: Recovery of Attorneys' Fees and Costs**

73.     Premier incorporates each factual allegation set forth above as though restated entirely in this Count IV.

74.     Pursuant to Section 506(b) of the Bankruptcy Code and governing state law, Premier seeks recovery of all reasonable attorneys' fees and costs incurred in enforcing its statutory privilege and lien claims and underlying obligations related thereto in this proceeding.

75.     Section 506(b) of the Bankruptcy Code provides that holders of over-secured claims are entitled to "reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b).

76.     In addition to the principal amount due for goods or services provided at the well site, the privilege under LOWLA secures repayment of interest, costs of preparing and filing the

statement of privilege and notice of *lis pendens*, and reasonable attorneys fees not to exceed 10% of the amount due. La. R.S. § 9:4862.

77.     Accordingly, Premier seeks a judgment recognizing its entitlement to costs and reasonable attorneys' fees incurred up through judgment for steps taken to enforce the Premier Liens and/or invalidate the Purported Liens, in amounts to be proven at trial, but not exceeding limits established by state law.

## RESERVATION OF RIGHTS

78.     Premier expressly reserves the right to amend or supplement this Complaint to state additional causes of action or any other additional factual or legal bases for recovery.

## PRAYER FOR RELIEF

**WHEREFORE**, Premier Offshore Catering, Inc. respectfully requests that the Court enter judgment in its favor, granting the declaratory relief requested herein, as follows:

i.      that Premier holds valid, fully-perfected, and timely-recorded mineral liens in the principal amount of $1,056,120.60 against the Oil and Gas Properties, each of which relate back to the date Premier commenced work upon each of the corresponding Oil and Gas Properties;

ii.     that the Premier Liens against the Additional 2023 Properties are prior to, and thus are effective against, any interests of the DIP Lenders in the 2023 Additional Properties;

iii.    that the Premier Liens are valid, fully-perfected, and timely-recorded mineral liens that are senior to the prepetition and post-petition claims and interests of BP Energy, including, but not limited to, claims and interests against the 2016 Properties;

iv.     that Premier is entitled to costs and reasonable attorneys' fees incurred up through judgment for steps taken to enforce the Keystone Liens and/or invalidate the Purported Liens, in amounts to be proven at trial, but not exceeding limits established by state law; and

v.      and for such other and further relief to which such Premier is justly entitled.

19

Respectfully submitted,

LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD

*/s/ Benjamin W. Kadden*
STEWART F. PECK (#10403),
BENJAMIN W. KADDEN (TX Bar # 24077542)
CHRISTOPHER CAPLINGER (#25357)
JAMES W. THURMAN (#38494)
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
E-mail:speck@lawla.com; bkadden@lawla.com
ccaplinger@lawla.com jthurman@lawla.com

*Counsel for Premier Offshore Catering, Inc*

20